UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

National Union Fire Insurance
Company of Pittsburgh, PA

        v.                          Civil No. 11-cv-303-JD
                                    Opinion No. 2011 DNH 218

NGM Insurance Company, et al.


                        O R D E R


     In these consolidated declaratory judgment actions, the
parties seek a determination as to which company is obligated to
provide insurance coverage for claims brought by Cody Wenzel in a
separate action.[1]  National Union Fire Insurance Company and NGM
Insurance Company have each filed a motion for summary judgment.
Wenzel moves to join NGM's motion for summary judgment.  There
being no objection, Wenzel's motion to join is granted.


                    Standard of Review

     "The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the

_____

     [1]See Wenzel v. Great Lakes Hydro Am. LLC, 11-cv-327 (D.N.H.
July 5, 2011).  Great Lakes Hydro America LLC is also known as
Brookfield Renewable Power, Inc.  Because the parties refer to
Great Lakes as Brookfield, that is the name that will be used in
this order.

movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  The court considers the undisputed facts and all
reasonable inferences from those facts in the light most
favorable to the nonmoving party.  <u>Estate of Hevia v. Portrio
Corp.</u>, 602 F.3d 34, 40 (1st Cir. 2010).  When parties file cross-
motions for summary judgment, the court must consider the motions
separately to determine whether the Rule 56 standard has been
satisfied by either party.  <u>Hartford Fire Ins. Co. v. CNA Ins.
Co. (Europe) Ltd.</u>, 633 F.3d 50, 53 (1st Cir. 2011); <u>Pac. Ins.
Co., Ltd. v. Eaton Vance Mgmt.</u>, 369 F.3d 584, 588 (1st Cir.
2004).

## <u>Background</u>[2]

Cody Wenzel was an employee of Daniel's Landscaping during
the events at issue in the case.  Brookfield hired Daniel's
Landscaping to perform work at its facility in Berlin, New
Hampshire.  Daniel's Landscaping and Brookfield entered a
contract for the work to be done at Brookfield's facility.  The
contract included an indemnity provision with a requirement that

---

[2]The background information is taken from the parties'
statements of undisputed facts.  NGM's motion to strike National
Union's factual statement was denied.

Daniel's Landscaping would provide a certificate of insurance which showed Brookfield as an additional insured.

Wenzel was injured on April 5, 2010, while he was working at Brookfield's facility, using machinery known as a Rack Rake.  The Rack Rake was owned by Brookfield.  The Rack Rake was being operated by David Gray, another employee of Daniel's Landscaping.

Wenzel filed suit in state court, and the action was removed to this court.  In the complaint, Wenzel alleges that Brookfield was negligent in allowing a "hazardous and dangerous condition relating to  . . . the Rack Rake," in failing to warn of "such dangerous and hazardous conditions and otherwise failing to properly maintain and keep [its] property and equipment and machinery in a manner safe for operation . . . ."  Doc. no. 1.  Wenzel states that he suffered a crush-type injury to his left hand and that the small finger on his left hand was severed.  He also alleges a claim under New Hampshire's Consumer Protection Act, Revised Statutes Annotated RSA chapter 358-A.  Brookfield has filed a third-party complaint against Daniel's Landscaping, alleging claims of breach of contract, indemnification, and contribution.

For the period when the accident happened, Daniel's Landscaping had liability insurance coverage under a policy issued by NGM, and Brookfield was listed as an additional

3

insured.  NGM's coverage for Brookfield, as an additional
insured, was limited by an endorsement, Form 64-8218.  National
Union insured Brookfield under a commercial general liability
policy.  A provision in each policy addressed the effect of the
insured having other insurance.

When Wenzel filed suit, National Union provided counsel for
Brookfield's defense.  Counsel tendered Wenzel's claim to NGM.
NGM disclaimed any obligation to defend or indemnify Brookfield.
National Union continues to provide a defense for Brookfield.

National Union brought a declaratory judgment action in this
court, seeking a determination pursuant to RSA 491:22 as to
National Union's and NGM's rights and obligations to defend and
indemnify Brookfield against Wenzel's personal injury claims.
Wenzel brought a declaratory judgment action in state court,
seeking a determination under RSA 491:22 as to the obligations of
National Union and NGM to provide coverage for his claims against
Brookfield.  Wenzel's declaratory judgment was removed to this
court and consolidated with National Union's declaratory judgment
action.

## Discussion

National Union contends that NGM is required to provide a
defense to Brookfield against Wenzel's claims in the underlying

suit, because Brookfield is an additional insured under the Daniel's Landscaping policy.  NGM acknowledges that Brookfield is an additional insured under the Daniel's Landscaping policy but contends that the endorsement provided by Form 64-8218 limits the coverage and that the provision which limits coverage when the insured has other insurance precludes primary coverage under the circumstances here.  Each insurance company seeks summary judgment on its interpretation of the applicable policies.

RSA 491:22 provides a means for obtaining a declaratory judgment, including a determination of insurance coverage.  See Kierstead v. State Farm Fire & Cas. Co., 160 N.H. 681, 687 (2010).  A dispute about insurance coverage requires the court to interpret the applicable policies, which is a question of law. N. Sec. Ins. Co. v. Connors, 161 N.H. 645, 649 (2011).  The court "construe[s] the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole."  Id.  When the policy terms are clear and unambiguous, the language is given "its natural and ordinary meaning."  Id.  Ambiguous policy terms generally are construed in favor of the insured but are not construed in favor of another insurer.  Ellis v. Royal Ins. Cos., 129 N.H. 326, 337 (1987).

5

I.   <u>NGM's Motion for Summary Judgment</u>

In support of its motion for summary judgment, NGM contends that NGM's policy does not cover Brookfield for Wenzel's claims in the underlying action and, alternatively, that the policy provides only excess coverage.  NGM argues that because the additional insured endorsement provided by Form 64-8218 limits coverage to claims for injury caused by Daniel's Landscaping or someone acting on its behalf, Wenzel's claims against Brookfield do not trigger coverage.  NGM also argues that even if the additional insured provision were triggered, its policy only provides excess coverage over primary coverage to Brookfield under the National Union policy.  National Union objects to both arguments.


A.   <u>Trigger of Coverage</u>

At this stage of the proceedings, the issue presented is whether NGM is obligated to provide a defense to Brookfield.  The defense in the underlying suit brought by Wenzel against Brookfield was tendered to NGM, and NGM rejected the tender.

An insurer's obligation to defend its insured is separate and distinct from its obligation to indemnify.  <u>Happy House Amusement, Inc. v. N.H. Ins. Co.</u>, 135 N.H. 719, 721 (1992). "In

New Hampshire, an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." <u>Progressive N. Ins. Co. v. Argonaut Ins. Co.</u>, 161 N.H. 778, 781 (2011) (internal quotation marks omitted).  Importantly, "[a]n insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where, by any reasonable intendment of the pleadings, liability of the insured can be inferred, and neither ambiguity nor inconsistency in the underlying writ can justify escape of the insurer from its obligation to defend." <u>N. Sec. Ins. Co.</u>, 161 N.H. at 650.  Therefore, "[w]hen the alleged facts do not clearly preclude an insurer's liability, inquiry may proceed into underlying facts." <u>M. Mooney Corp. v. Fidelity & Guar. Co.</u>, 136 N.H. 463, 469 (1992).

Brookfield was added to the NGM policy provided to Daniel's Landscaping through an "Additional Insured Schedule."  An endorsement to the policy, Form 64-8218, added part 4 to the Businessowners Liability Coverage Form, at Paragraph C. "Who Is an Insured."  The endorsement provides, referring to the Additional Insured Schedule:[3]

---

[3]For clarity, the insured is substituted for "you."  When as here, the policy states that "you" and "your," as used in the

7

> 4.  Any person(s) or organization(s) shown in the
> Schedule is also an additional insured, but only with
> respect to liability for "bodily injury," "property
> damage," "personal injury" or "advertising injury"
> caused, in whole or part, by
>     a.  [Daniel's Landscaping's] acts or omissions; or
>     b.  The acts or omissions of those acting on [Daniel's
>     Landscaping's] behalf;
> in the performance of your ongoing operations or
> "[Daniel's Landscaping's] your work" included within
> the "products completed operations" hazard for the
> additional insured(s) at the location(s) designated
> above and described in the written contract or
> agreement.

Doc. No. 1, Ex. A, Attach. 1, at 12.

NGM contends that Wenzel's claims do not trigger coverage

for Brookfield as an additional insured because Wenzel does not

allege that Daniel's Landscaping or anyone acting on behalf of

Daniel's Landscaping caused his injuries.  NGM challenges

National Union's interpretation of the phrase "caused, in whole

or part, by" as overly expansive.  National Union argues that the

phrases "caused by" and "arising under" are the same and that

because Daniel's Landscaping was performing work for Brookfield

at the time of the accident, the policy was triggered.  National

Union also argues that a broader view of the circumstances in the

_____

policy, mean the "Named Insured Shown in the Declarations" and
the "Who Is An Insured" section does not include additional
insureds as named insureds, the named insured, not an additional
insured, is "you" and "your" as used in the policy.  <u>Wright-Ryan
Constr., Inc. v. AIG Ins. Co. of Canada</u>, 647 F.3d 411, 415-18
(1st Cir. 2011).

underlying case applies for the purpose of determining NGM's duty to defend Brookfield.

The New Hampshire Supreme Court has not interpreted the phrase, "caused, in whole or in part," as it is used in NGM's policy.  In Hartley v. Elec. Ins. Co., 154 N.H. 687, 689 (2007), the court construed the phrase "injury caused by an accident" to require a connection between the accident and the resulting harm that was more than tenuous but not necessarily the proximate cause.  Other courts that have interpreted the phrase "caused, in whole or in part" have concluded it means the insurer "specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured and the additional insured."  Pro Con, Inc. v. Interstate Fire & Cas. Co., --- F. Supp. 2d ---, 2011 WL 2579825, at *12 (D. Me. June 30, 2011) (citing cases); see also Dale v. Cumberland Mut. Fire Ins. Co., 2010 WL 4909600, at *7 (E.D. Pa. Nov. 30, 2010) (also citing cases); JNJ Found. Specialists, Inc. v. D.R. Horton, Inc., --- S.E.2d ---, 2011 WL 3202307, at *6 (Ga. App. July 28, 2011).  The interpretation of the phrase used by other courts is persuasive and is adopted here.

In this case, Wenzel alleged claims only against Brookfield, not Daniel's Landscaping.  Because Wenzel was an employee of Daniel's Landscaping at the time of the accident, he was barred

9

by the Workers' Compensation statute from bringing claims against Daniel's Landscaping and its employees.  See RSA 281-A:8. Therefore, based on the complaint alone, Brookfield's alleged liability is not for injuries caused in whole or in part by Daniel's Landscaping.

Because both Wenzel and Gray, who was working with Wenzel, were employees of Daniel's Landscaping, the court looks at the circumstances of the accident, beyond the claims in the complaint, to determine whether the insured, Daniel's Landscaping in this case, could have been a cause of the alleged injury. Gilbane Bldg. Co. v. Empire Steel Erectors, L.P., 691 F. Supp. 2d 712, 721 (S.D. Tex. 2010).  Further, when, as here, the state has a comparative fault statute, the plaintiff's "own negligence is always at issue, even in the absence of an allegation in his pleading to that effect."  Id.

Brookfield admitted in its answer that employees of Daniel's Landscaping were required to use the Rack Rake while working at Brookfield's facility.  By way of affirmative defenses, Brookfield alleged that Wenzel's claims were barred by his comparative fault, that Wenzel's injuries were caused by the superseding and intervening acts of others, and that his injuries were caused by his misuse of the Rack Rake.  For purposes of summary judgment, the parties stipulated that Gray, another

10

Daniel's Landscaping employee, was operating the controls of the Rack Rake when Wenzel was injured.  Wenzel alleges that Brookfield was negligent by allowing "a stationary building member or I-beam within the area of the defendant's Rack Rake set in such a way as to allow the Rack Rake apparatus to come into contact with the stationary building member or I-beam," which suggests that the use of the Rack Rake may have partly caused his injuries.  Therefore, in the broader context of the circumstances of the accident, Wenzel or Gray or both of them could have been a cause of Wenzel's injuries, making the injuries potentially attributable, in part, to Daniel's Landscaping.

In addition, Brookfield has filed a third-party complaint against Daniel's Landscaping in Wenzel's suit, alleging among other things that Daniel's Landscaping failed to perform services for Brookfield in a good and workmanlike manner.  Brookfield's allegations also suggest that Wenzel's injuries could be attributable to Daniel's Landscaping.

Under these circumstances, NGM has not shown that the lack of allegations against Daniel's Landscaping in Wenzel's complaint precludes its obligation to provide a defense to Brookfield.  NGM is not entitled to summary judgment on its defense that its coverage was not triggered by Wenzel's claims.

11

B.  Priority of Coverage

Alternatively, NGM seeks summary judgment based on its other-insurance provision, arguing that its policy provides only excess coverage and National Union's insurance provides primary coverage.  Further, under the other-insurance provision, NGM contends that it is not obligated to provide a defense when it provides only excess coverage.  In its objection and its own motion for summary judgment, National Union argues that the other-insurance provision in its policy limits its obligation to excess coverage, because NGM is obligated to provide primary coverage to Brookfield.

NGM's policy covers Brookfield as an additional insured. The additional insured endorsement in the policy provides coverage for bodily injury, property damage, personal injury, or advertising injury "caused, in whole or in part, by:  a. [Daniel's Landscaping's] acts or omissions; or b. The acts or omissions of those acting on [Daniel's Landscaping's] behalf; in the performance of [Daniel's Landscaping's] ongoing operations or '[Daniel's Landscaping's] work' included with [other parts of the policy]."  Form 64-8218, Doc. 1, Ex. 1 at 12.  National Union's policy insures Brookfield as the named insured against claims for damages because of bodily injury, which was caused by an accident within the policy period.

12

NGM's and National Union's policies also include other-insurance provisions, making each policy's coverage excess over other primary coverage.  The other-insurance provision in NGM's policy provides in pertinent part as follows:

> 1.  If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether [Daniel's Landscaping] can collect on it or not.
> . . .
> 3.  When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. . .

Doc. No. 1, Ex. A, Attach. 2 at 11.  The other-insurance clause in National Union's policy provides in pertinent part as follows:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> a.  Primary Insurance
> This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.
>
> b.  Excess Insurance
> (1)  This insurance is excess over:
> . . .
> (b)  Any other primary insurance available to [Brookfield] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Brookfield has] been added as an additional insured by attachment of an endorsement.

13

Doc. no. 1, Ex. B at 19.

NGM contends that its policy provides only excess coverage for Brookfield because there is "other insurance covering the same loss or damage," namely National Union's policy providing coverage for Wenzel's claims against Brookfield.  NGM further argues that National Union's other-insurance provision does not apply because it provides excess coverage only over other <u>primary</u> insurance coverage.  NGM contends that its coverage for Brookfield is <u>excess</u>, not <u>primary</u> coverage, and, therefore, National Union's other-insurance provision is not triggered in these circumstances.  National Union counters that NGM's policy also provides primary coverage, although the word primary is not used, because NGM's policy covers Wenzel's claims against Brookfield.

Primary insurance is coverage under the terms of the policy for a claim or loss in the first instance, that is, the insurer's obligation arises immediately upon the occurrence of a loss or happening.  <u>See</u> <u>Am. Cas. Co. of Reading, PA v. Health Care Indem., Inc.</u>, 520 F.3d 1131, 1134 (10th Cir. 2008); <u>Horace Mann Ins. Co. v. Gen. Star Nat. Ins. Co.</u>, 514 F.3d 327, 333 (4th Cir. 2008); <u>Yaffe Cos., Inc. v. Great Am. Ins. Co., Inc.</u>, 499 F.3d 1182, 1189 (10th Cir. 2007); <u>St. Paul Mercury Ins. Co. v. Lexington Ins. Co.</u>, 78 F.3d 202, 209 n.23 (5th Cir. 1996);

Highlands Ins. Co. v. Cont'l Cas. Co., 64 F.3d 514, 520 (9th Cir.
1995); Am. Safety Cas. Inc. Co. v. City of Waukegan, 776 F. Supp.
2d 670, 706 (N.D. Ill. 2011).  Some policies provide only excess
coverage, meaning that the insurer's obligations attach only
after a certain amount of primary insurance has been exhausted.
See Peerless Ins. v. VT Mut. Ins. Co., 151 N.H. 71, 73 (2004).
Certain other policies provide primary coverage but include an
other-insurance provision that makes the coverage excess over
other applicable primary coverage.  Id.; see also Wright-Ryan,
647 F.3d at 414.  When the other-insurance provisions in two or
more policies require the court to assign the same priority to
the policies' coverage, the provisions are deemed to be "mutually
repugnant," and the court will "order that each insurer be liable
for its pro rata share of any settlement or judgment based upon
the policy limits and share equally in defense costs."  Peerless
Ins., 151 N.H. at 74.

     In this case, the policies both provide primary coverage for
the stated liabilities.  The policies do not cover the same
liabilities, however, and therefore do not provide the same
primary coverage.  NGM's policy for purposes of providing a
defense covers Brookfield for Wenzel's claims to the extent the
injury was caused at least in part by Daniel's Landscaping or its
employees.  The NGM policy does not cover Brookfield for Wenzel's

15

injuries if they were caused only by Brookfield.  The National Union policy covers Brookfield for Wenzel's claims in their entirety.

When the coverage of each policy is considered in the context of the other-insurance provisions, the effect is that National Union's policy provides primary coverage for Wenzel's claims and NGM's policy provides excess coverage.  That result obtains because NGM's other-insurance policy makes its coverage excess if other insurance exists that covers "the same loss or damage," which is any liability Brookfield may have based on acts or omissions of Daniel's Landscaping.  National Union's policy provides broader coverage for claims against Brookfield.

National Union's other-insurance provision applies only when there is other "primary insurance available to [Brookfield] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [Brookfield has] been added as an additional insured by attachment of an endorsement."  As discussed above, NGM's coverage is limited so that its policy does not provide primary coverage to Brookfield that meets the broad description in the National Union policy.  That result is bolstered by the analysis

of other-insurance provisions in Ellis, 129 N.H. at 335-37.[4]
National Union contends, however, that under the analysis used in
Wright-Ryan, 647 F.3d at 414-16 (1st Cir. 2011), its coverage is
excess and NGM's coverage is primary.

   1.   Ellis

   In Ellis, Concord General Mutual Insurance Company
("Concord") and Royal Insurance Companies ("Royal") provided
coverage to Ellis for her injuries from an automobile accident.
129 N.H. at 327-28.  Concord and Royal each argued that its
coverage was excess to the other.  Id. at 335.  Concord argued
that Royal's coverage was primary and that seven other-insurance
provisions in the policy and endorsements demonstrated a purpose
to provide primary coverage under the circumstances presented in
the case.  Based on that analysis, Concord contended that its
policy provided only excess coverage based on its own other-

_____

   [4]Although NGM also relies on Peerless, 151 N.H. at 72-74, to
support a result in its favor, the circumstances there were
different so that neither the analysis nor the outcome in
Peerless is particularly applicable to this case.  Unlike here,
the other-insurance provisions in Peerless were substantially the
same, and the court assigned the same priority to each policy.
151 N.H. at 74.  As a result, the policies were mutually
repugnant which required a pro rata sharing of coverage.  Id.;
but see Willbros RPI, Inc. v. Cont'l Casualty Co., 601 F.3d 306,
312-13 (5th Cir. 2010) (holding that other-insurance provisions
similar to those in this case conflicted, resulting in pro rata
sharing).

insurance provision.  Id. at 335-36.  Royal relied on one of the
seven other-insurance provisions and argued that its insurance
was not available as primary insurance, so that Concord's other-
insurance provision was not triggered.  Id. at 337.

The supreme court noted that of the seven provisions in the
Royal policy cited by Concord, the other-insurance endorsement
cited by Royal most clearly related to the circumstances
presented by Ellis.  Id. at 338.  Under that provision, Royal's
coverage was excess "[i]f other collectible insurance is
available to the insured . . . ."  Id. at 336.  Concord's policy,
on the other hand, provided that its insurance was "excess
insurance over any other similar insurance available to such
insured and applicable to such automobile as primary insurance .
. . ."  Id. at 337.  The trial court held that Concord's
insurance was primary and that Royal's coverage was excess to
Concord's coverage, because under the applicable provisions,
Concord's policy covered the claim which triggered Royal's other-
insurance provision.  Id. at 337.  The supreme court affirmed the
trial court's decision, holding that Royal's other-insurance
provision made its coverage excess.  Id. at 338.

Here, NGM's policy states in pertinent part:  "If there is
other insurance covering the same loss or damage, we will pay
only for the amount of covered loss or damage in excess of the

18

amount due from that other insurance, whether [Daniel's
Landscaping] can collect on it or not."  National Union's other-
insurance provisions states in pertinent part:  "This insurance
is excess over: . . .  Any other primary insurance available to
you . . . ."  NGM argues that, as in Ellis, its coverage is
excess because National Union's policy provides primary coverage
unless another policy provides primary coverage, which NGM
contends it does not do.  As a result, NGM contends, its policy
is excess, and National Union's other-insurance provision was not
triggered because NGM did not provide primary coverage.

In an effort to avoid Ellis, National Union argues that the
New Hampshire Supreme Court gave effect to Royal's other-
insurance provision, rather than Concord's provision, because the
language in the Royal provision related more closely to the
circumstances of the underlying case.  National Union is
mistaken.  The supreme court chose one of seven provisions in
Royal's policy as the applicable provision, based on its
specificity to the circumstances, but did not compare Royal's and
Concord's provisions in their separate policies on that basis.
Therefore, National Union's argument is based on a
misinterpretation of the Ellis decision.

National Union also argues that the New Hampshire Supreme
Court never applied Concord's other-insurance provision because

the Royal policy provision applied specifically to additional insureds and Concord's provision did not.  National Union argues that its provision, which specifically references additional insureds, should govern the priority of coverage in this case and that its provision would make its coverage excess.  National Union's argument is based on the same misunderstanding of the Ellis decision that is noted above.

In Ellis, the court did not decide that Royal's other-insurance provision applied because of its reference to additional insureds.  Instead, the court concluded that when the two policies were considered together, Ellis had insurance available from Concord which made Royal's coverage only excess.  Therefore, the reference to additional insureds in Royal's other-insurance provision was not the reason the court applied that provision.

The decision in Ellis supports the plain meaning of the other-insurance policies here.  Under that analysis, NGM would provide only excess coverage while National Union would provide primary coverage.


        2.  Wright-Ryan

National Union argues that the analysis used in Wright-Ryan applies here and makes its coverage excess over NGM's coverage.

Wright-Ryan is a construction company that was working at
the University of Southern Maine and hired a subcontractor for
part of the project, requiring the subcontractor to include
Wright-Ryan as an additional insured on its liability policy
issued by AIG.  Wright-Ryan, 647 F.3d at 412-13.  Wright-Ryan
also had its own liability policy issued by Acadia Insurance
Company.  Id. at 412.  After a subcontractor's employee was
injured on the job, a dispute arose as to whether AIG or Acadia
was obligated to provide primary insurance coverage to Wright-
Ryan.  Id. at 413.  The district court held that Acadia's policy
provided primary coverage and the AIG policy provided only excess
coverage.  Id. at 412.  Wright-Ryan and Acadia appealed.

On appeal, the court noted that the policies included the
same other-insurance provision and that both policies defined
"you," as used in the policies, to mean the named insured.  Id.
at 414-15.  The court concluded that the policies' definitions of
"you" were unambiguous and that the policies did not include
additional insureds as named insureds.  Id. at 416.  When the
named insured for each policy was substituted for "you" in each
other-insurance provision, the meaning became clear:  the AIG
policy was primary and the Acadia policy was excess only.  Id. at
416-17.  Although unnecessary to its analysis, the court also
noted that the priority of policies based on the other-insurance

21

provisions was consistent with the parties' purpose as shown by their course of dealing.  Id. at 417.

National Union ignores the actual analysis used in Wright-Ryan and suggests that the decision was based on Wright-Ryan's status as an additional insured and on the parties' course of dealing.[5]  Relying on its own interpretation of Wright-Ryan, National Union argues that an indemnity provision in the agreement between Brookfield and Daniel's Landscaping, for work to be done by Daniel's Landscaping at Brookfield's facility, supports its interpretation of the other-insurance provisions. National Union invites the court to consider the indemnity provision on the theory that the parties intended the NGM policy to provide primary coverage.  NGM objects to considering the indemnity provision for purposes of construing the policies' other-insurance provisions and also challenges the enforceability of the provision.

---

[5]National Union's theory is similar to the "closer-to-the-risk" doctrine, which apparently is used in some states to untangle conflicting other-insurance provisions.  See Nat'l Surety Corp. v. Ranger Ins. Co., 260 F.3d 881, 884 (8th Cir. 2001).  National Union, however, has not made that argument nor shown that New Hampshire would follow the doctrine.

3.   <u>Indemnity Provision</u>

The work agreement entered into between Brookfield and
Daniel's Landscaping includes an indemnity provision.  Neither
NGM's nor National Union's policy refers to or cites the work
agreement or the indemnity provision.  Therefore, the indemnity
provision is not a part of or incorporated into the policies at
issue in this case.

In general, the court will not consider evidence extrinsic
to the insurance policies to determine the meaning of a policy
provision.  <u>Tech-Built 153, Inc. v. Va. Sur. Co., Inc.</u>, 153 N.H.
371, 375 (2006).  An exception to the rule exists when a disputed
policy provision depends on the parties' intent and "the intent
of the contracting parties can be conclusively resolved by
objective extrinsic evidence . . . ."  <u>Id.</u> (where the insurance
policy was internally contradictory with respect to who was an
insured but the leasing agreement clarified who was an insured);
<u>see also</u> <u>Behrens v. S.P. Constr. Co., Inc.</u>, 153 N.H. 498, 500 &
504 (2006); <u>Dillman v. N.H. College</u>, 150 N.H. 431, 434 (2003).
When no ambiguity exists, however, the court will not consider
extrinsic evidence to interpret an otherwise unambiguous
contract.  <u>See</u> <u>Merrimack Sch. Dist. v. Nat'l Sch. Bust Serv.,
Inc.</u>, 140 N.H. 9, 13-14 (1995); <u>see also</u> <u>Wright-Ryan</u>, 647 F.3d at
416 (applying Maine law).

23

In this case, National Union has not demonstrated an ambiguity or internal inconsistency in the parties' other-insurance provisions that can be resolved by reference to the indemnity provision.  Instead, National Union relies on the indemnity provision to establish the priority of coverage, based on a theory that the indemnity provision best expresses the parties' intent and circumvents the other-insurance provisions in the policies.  NGM objects to consideration of the indemnity provision, contending that the court's analysis is limited to the policies themselves and that the indemnity provision is unenforceable so that it provides no guidance on the priority of coverage.

Some jurisdictions follow a rule that an other-insurance provision may be circumvented by an indemnity agreement between the insureds, which "may shift an entire loss to a particular insurer notwithstanding the extent of an 'other insurance' clause in its policy."  15 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 219:1 (3d ed. 2011); see also Wal-Mart Stores, Inc. v. RLI Ins. Co., 292 F.3d 583, 588-89 (8th Cir. 2002).  In a diversity case, this court applies the law of the forum state, which is New Hampshire.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

National Union has not cited a New Hampshire case that addresses the effect of an indemnification agreement on other-insurance provisions, and the court has not found such a case. Further, National Union makes no argument that the New Hampshire Supreme Court would likely adopt the rule cited in Couch.  See, e.g., Kunelius v. Town of Stow, 588 F.3d 1, 9 (1st Cir. 2009); St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., 365 F.3d 263, 272 (4th Cir. 2004).  In the absence of a developed argument as to whether the New Hampshire Supreme Court would adopt the indemnification rule if the issue were presented, the court will not pursue the question on behalf of National Union.  See, e.g., Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

Even if New Hampshire law would endorse the rule that an indemnification provision, in appropriate circumstances, could circumvent other-insurance provisions in the applicable insurance policies, that rule would not change the outcome here.  Courts refer to indemnification agreements to determine the parties' intent when the applicable other-insurance provisions conflict, that is when each policy "provides primary coverage to the same insured in respect to the claim in question and contains mutually consistent 'other insurance' provisions. . . ."  Am. Indem.

25

Lloyds v. Travelers Prop. & Cas. Ins. Co., 335 F.3d 429, 435-36 (5th Cir. 2003); see also Wal-Mart Stores, 292 F.3d at 587-88. As is discussed above, because of the limitation in NGM's insuring agreement provided by Form 64-8218, the other-insurance provisions in this case are not co-extensive and do not conflict.

Further, the agreement that includes the indemnification provision was made between Daniel's Landscaping and Brookfield. Both are the insureds of the insurer parties in this case, but neither is a party individually. In fact, Brookfield is an insured of National Union and an additional insured of NGM.[6] The insurers' dispute about the indemnification provision raises complex issues that, if resolved here, would establish the enforceability of the provision and Brookfield's and Daniel's Landscaping's rights and obligations under the provision, if enforceable. Brookfield has raised the same issues by means of a third-party complaint in the Wenzel action. That appears to be

---

[6]Brookfield's relationship to both insurers raises concern with respect to construing the indemnification provision. To the extent NGM is subrogated to Brookfield's rights or is representing Brookfield as an additional insured, its position with respect to the indemnification provision may conflict with Brookfield's interests. Cf. Tech-Built 153, 153 N.H. at 372 (where parties to the underlying lease agreement were also parties in the insurance coverage action).

26

the more appropriate forum to determine the meaning and enforceability of the indemnification provision.

For all the reasons discussed, the court will not consider the indemnification provision to determine the issue of the priority of insurance coverage.

### C.  Duty to Defend

NGM did not establish, as a matter of law, that Form 64-8218 precluded its obligation to defend Brookfield against Wenzel's claims in the underlying action.  Therefore, coverage under NGM's policy was triggered by Wenzel's claims in the underlying action as to NGM's duty to provide a defense to Brookfield.[7]

With respect to the effects of the other-insurance provisions, National Union has not shown any ambiguity in the provisions or a conflict between the provisions that could support consideration of the indemnification agreement.  National Union also did not show that rule, used in some other jurisdictions to consider indemnification provisions in the event of a conflict between other-insurance provisions, would be adopted by the New Hampshire Supreme Court.  Therefore, the court

---

[7]As the parties appear to agree, an insurer's duty to indemnify requires a different analysis based on the outcome of the underlying action, which is not addressed here.

27

did not consider the indemnification provision for purposes of resolving insurance priority in this case.

The interpretation of insurance policy provisions, absent ambiguity, is a legal question, which is decided by the court. Progressive N. Ins. Co., 161 N.H. at 781.  To the extent any facts are pertinent to the interpretation of the other-insurance provisions here, they are undisputed.  Therefore, the priority of coverage may be resolved as a matter of law.

Based on the plain language of the policies' coverage provisions and their other-insurance provisions and on the analysis used in Ellis, NGM has shown that its coverage is excess over National Union's primary coverage to Brookfield for Wenzel's claims.

NGM's other-insurance provision also states that "[w]hen [NGM's] insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or 'suit' that any other insurer has a duty to defend."  Doc. 1, Ex. 2, at 11.  Based on that provision, because NGM has shown that its coverage is excess, NGM has no duty to defend Brookfield in Wenzel's action.

II.  <u>National Union's Motion for Summary Judgment</u>

National Union moves for summary judgment in its favor on
the issue of whether Wenzel's claims trigger NGM's coverage for
Brookfield and the issue of coverage priority.  NGM objects to
National Union's motion.

A.  <u>Trigger of Coverage</u>

As discussed above in the context of NGM's motion for
summary judgment, NGM asserted that its coverage for Brookfield
was not triggered by Wenzel's claims in the underlying action.
NGM argued that because Form 64-8218 limits coverage to claims
for injuries caused, in whole or in part, by Daniel's
Landscaping, Wenzel's claims alleging negligence by Brookfield
were not covered.  National Union seeks summary judgment to
establish that Wenzel's claims triggered NGM's duty to defend.

The discussion of the duty to defend and the nature of the
claims and defenses alleged in the underlying action need not be
repeated here.  Because the complaint and answer in Wenzel's suit
include allegations which suggest that Wenzel's injuries could
have been caused, in whole or in part, by his own actions or
Gray's actions, the additional insured endorsement was triggered.
National Union is entitled to summary judgment on that issue.

29

B.  <u>Priority of Coverage</u>

National Union also seeks summary judgment that its policy provides only excess coverage, while NGM's policy provides primary coverage to Brookfield.  National Union raised most of its theories and defenses in the context of NGM's motion for summary judgment.  For purposes of NGM's motion, all reasonable inferences, to the extent any were raised, were resolved in favor of National Union.  Under that standard, NGM demonstrated that it was entitled to summary judgment.

In support of its own motion for summary judgment, National Union also argues that "declaring the NGM policy to be primary and non-contributory would avoid the circuitous litigation that would result from a contrary holding."  Doc. 22 at 20.  National Union contends that NGM will ultimately be required to pay the costs of defense and indemnification for Brookfield pursuant to the indemnity provision, "because Daniel's Landscaping (NGM's named insured) promised to indemnify Brookfield against the claim and, therefore, National Union would be subrogated to all rights that Brookfield has against Daniel's Landscaping."  <u>Id.</u> at 22.

National Union cites <u>Wal-Mart</u>, 292 F.3d at 594, which states:  "Generally, courts will not allow parties to engage in circuitous action when the foreseeable end result is to put the parties back in the same position in which they began."  Here,

30

however, the effect of the indemnification provision has not been decided.  Although it is possible that Daniel's Landscaping may be required to indemnify Brookfield for all or part of its liability to Wenzel, that issue remains to be determined. Therefore, the concern expressed in <u>Wal-Mart</u> about circuitous litigation would not require NGM to provide primary coverage to Brookfield in this case.

Because National Union did show that it is entitled to summary judgment as a matter of law on the issue of which policy provides primary coverage, its motion is denied on that issue.

Conclusion

For the foregoing reasons, Wenzel's motion to join NGM's motion for summary judgment (document no. 31) is granted.  NGM's motion for summary judgment (document no. 25) is denied as to the trigger of coverage issue and is granted as to priority of coverage.  National Union's motion for summary judgment (document no. 20) is granted as to the trigger of coverage issue and denied as to the priority of coverage issue.

National Union shall provide primary coverage, and NGM shall provide excess coverage to Brookfield in the underlying suit, <u>Wenzel v. Great Lakes Hydro Am. LLC</u>, 11-cv-327 (D.N.H. July 5, 2011).  NGM has no duty to provide a defense.

31

The clerk of court shall enter judgment accordingly and close both cases, <u>National Union Ins. Co. v. NGM Ins. Co.</u>, 11-cv-303-JD, and <u>Wenzel v. National Union Fire Ins. Co.</u>, 11-cv-335-JD.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 21, 2011

cc:  Christopher E. Grant, Esquire
     Alexander G. Henlin, Esquire
     John D. Hughes, Esquire
     Elizabeth L. Hurley, Esquire